UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                   :

UNITED STATES OF AMERICA,          :

           - v.-                                 :

MIKHAIL ZEMLYANSKY, et al.       :        S1 12 Cr. 171 (JPO)

                Defendants.               :

------------------------------------------------------------x


## GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION FOR A BILL OF PARTICULARS

                                    PREET BHARARA
                                    United States Attorney for the
                                    Southern District of New York
                                    Attorney for the United States
                                          of America

DANIEL S. GOLDMAN
NICHOLAS L. McQUAID
CAROLINA A. FORNOS
Assistant United States Attorneys

    - Of Counsel -

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                             :
UNITED STATES OF AMERICA,                                    :
                                                             :
      - v.-                                           :
                                                             :
MIKHAIL ZEMLYANSKY, et al.                                   :   S1 12 Cr. 171 (JPO)
                                                             :
      Defendants.                                     :
                                                             :
-------------------------------------------------------------x

<u>GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION FOR A BILL OF PARTICULARS</u>

      The Government respectfully submits this memorandum in opposition to defendant Yuri Zayonts' motion, on behalf of all defendants, for a bill of particulars, pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure. The defendants request two categories of particulars, one relating to the victims of the fraud and one to the false and fraudulent representations to those victims. With respect to the first category, the Government will agree to provide the names of the victims of the fraud, and thus that portion of the motion should be denied as moot. With respect to the second category, as set forth below, the defendants have failed to demonstrate any particularized need for the information they have demanded and instead are improperly seeking to use Rule 7(f) as a general discovery device. The Court should therefore deny the defendants' motion with respect to that request.

**A.**    **Background**

      **1.**    **The Indictment**

      On February 28, 2012, a grand jury sitting in this district returned a superseding indictment, S1 12 Cr. 171 ("Indictment") charging the defendants in four counts. All four counts

related to crimes committed in connection with an ongoing scheme to fraudulently bill insurance companies for the provision of medical services to automobile accident victims under New York's no-fault insurance laws.

The Indictment, which is thirty-four pages, sets forth detailed allegations describing the defendants' no-fault scheme. According to the Indictment, under New York State law, automobile owners are required to purchase a no-fault insurance plan that enables the driver and passengers of a vehicle in an automobile accident to obtain benefits of up to $50,000 per person for injuries sustained in the accident, regardless of fault. (Indictment ¶ 3). The payments are required to be made promptly and can be claimed without filing a personal injury lawsuit. (Indictment ¶ 3). New York's no-fault laws allow the accident victims to assign their medical treatment claims to the medical service providers or their agents, who can then bill the insurance companies directly. (Indictment ¶ 3).

As explained in the Indictment, the defendants set up both no-fault medical clinics ("No-Fault Clinics") and clinics that provided specific additional medical treatments ("Modality Clinics") for the sole purpose of defrauding insurance companies under New York's no-fault laws. (Indictment ¶¶ 4, 7). The No-Fault and Modality Clinics were incorporated by licensed medical professionals, as required by New York law, but were in fact owned, operated and controlled by individuals who were not medical professionals and who were not identified on documents filed with New York State authorities ("No-Fault Clinic Controllers" and "Modality Clinic Controllers" respectively). (Indictment ¶¶ 6-7).

The Indictment describes with specificity the two theories of fraud that are at the heart of the charges against the defendants. First, the Indictment explains that the No-Fault

Clinics and Modality Clinics routinely provided and billed for medical treatments that were either never provided and/or medically unnecessary. (Indictment ¶ 4). The insurance companies, which were only required to compensate accident victims for medically necessary treatments, were therefore defrauded into paying for treatments for which they otherwise would not have paid. Second, the Indictment explains that because New York law requires medical clinics to be owned and operated by licensed medical practitioners, insurance companies would have denied all billings from a No-Fault Clinic or Modality Clinic that was not, in fact, owned and operated by a licensed medical practitioner, but was instead owned, operated and controlled by a clinic controller. (Indictment ¶¶ 6-7). Under this "fraudulent incorporation theory," any billing from a clinic that was not owned, operated and controlled by the medical professional under whose name the clinic was incorporated is fraudulent in nature because the insurance companies would not have paid had they known the truth about who controlled the clinic, and the insurance companies were therefore defrauded on any claim for payment from those fraudulently incorporated medical clinics.

    **2.    Discovery**

Since the filing of the Indictment and the arrest of the defendants the following day, the Government has provided discovery pursuant to Rule 16 of the Federal Rules of Criminal Procedure, including (1) wiretap applications and interceptions; (2) consensual audio and video recordings; (3) search warrant applications and documents seized pursuant to those searches, including signature stamps for incorporating medical practitioners; (4) other documents and items obtained during the investigation, including patient ledgers from several of the No-Fault Clinics; (5) licensing information for medical professionals; (6) corporate filings for

professional corporations; (7) patient records and (8) bank records. The Government has taken steps to ensure that the discovery is easily accessible to defense counsel. The Government has provided a number of summary documents to guide defense counsel's review of the discovery, including a detailed, master discovery index, a separate index of the patient records, and a summary chart of the various consensual recordings that identifies the participants in the conversation.

With respect to the wiretap recordings, the Government has provided linesheets for all the calls that set forth the participants and provide summaries and/or transcripts of the conversation. Further, the wiretap applications and periodic reports highlight the most important calls and descriptions of why, at the time of the given application or report, the FBI agent describing the call believed it was relevant.

The Government is also providing a detailed chart of 133 professional corporations that it believes were used by the defendants in furtherance of the scheme (attached hereto as Exhibit A).[1] The chart identifies the names of each professional corporation, the incorporating medical practitioner, and the defendants that were associated with that professional corporation.

Finally, the Government's publicly filed detention motion, filed on February 29, 2012 ("Detention Motion"), describes in even greater detail how the defendants' scheme worked. This includes elaborating on the relationship between the licensed medical professionals, who

---

[1] The Government provides this chart as an aide to defense counsel and does so pursuant to the terms of the draft transcript stipulation previously provided to all the defendants. This chart is meant to advise the defendants of the Government's view of which defendants are associated with which professional corporations, and is subject to change.

were the straw owners of the clinics and the professional corporations, and the clinic controllers, who ran the clinics, as well as a detailed description of their various roles and responsibilities.

The Detention Motion explains, for instance, that:

> The No-Fault Clinic Controllers essentially purchased the licenses of medical professionals by paying them a fee and/or salary (the "No-Fault Doctors") to (1) incorporate the No-Fault Clinics, (2) lease the clinic property, (3) open the clinic bank account, (4) sign the bills for initial evaluations, and (5) make the excessive and unnecessary referrals for other unnecessary and excessive medical treatments and medical supplies.  For those same clinics, the No-Fault Clinic Controllers (1) supplied the initial funds to establish the No-Fault Clinic, (2) identified the location for the clinic, (3) negotiated the rent, (4) sourced and paid for the equipment, (5) recruited patients (see below), and (6) received any profits from the clinic.  This arrangement was, in and of itself, a fraud, and is one of two ways in which the Detention Defendants and their co-conspirators defrauded the insurance companies.

(Detention Motion 4) (citation omitted).

The Detention Motion also explains in detail how the No-Fault Clinics provided medically unnecessary treatments that were then billed to insurance companies:

> When a patient arrived for treatment at the No-Fault Clinics, he or she was evaluated by a No-Fault Doctor, who recommended a standard, usually uniform schedule of treatment, regardless of actual medical need.  The standard schedule of treatments included physical therapy, chiropractic and acupuncture, often as many as five times per week.  Nearly every time a patient went to a No-Fault Clinic, the patient received all three of those treatments, a course of treatment that expert physicians will testify to be medically unnecessary on its face.  In addition, in almost every case, the No-Fault Doctor prescribed a near-identical assortment of medical supplies, which are provided by a durable medical equipment ("DME") clinic in a black garbage bag and are uniformly unnecessary and excessive.  Patients who have been interviewed consistently said they were not told about these medical supplies nor instructed on how to use them, but nearly every single patient received the initial supply.  In some cases,

>      insurance companies received bills for supplies that were not
>      actually provided to the patients.

(Detention Motion 5). With respect to the Modality Clinics, the Detention Motion explains that the Doctors at the No-Fault Clinics referred every patient to various Modality Clinics for a standard scheduled of treatments, including magnetic resonance imaging ("MRI"), psychology, x-rays, various neurological assessments, orthopedic treatments, and, in some cases, manipulation under anesthesia treatments ("MUA"), even though those treatments were generally medically unnecessary. (Detention Motion 5-6). The Detention Motion also explains that the Modality Controllers provided kick-back payments to the No-Fault Clinic Controllers for each payment, providing an obvious financial incentive to the No-Fault Clinic Controllers to ensure that each patient was referred to each modality. (Detention Motion 6).

**B.    Argument**

Through their motion for a bill of particulars, the defendants seek to compel disclosure of (1) specification of the victims of the frauds and (2) specification of the "false and fraudulent representations to the victims of the frauds . . . ." (Defendants' Motion 2). With respect to the defendants' first request, the Government will provide the defendants a preliminary list of the victims of the fraud, all of whom are insurance companies who provided no-fault insurance during the time period of the defendants' scheme, by November 15, 2012.[2] The

---

[2]    While the Indictment states in paragraph 14 that the defendants defrauded "New York state," New York state was not the intended victim of the defendants' scheme. Instead, the defendants' fraudulent incorporation of the medical clinics necessarily included misrepresentations to the state of New York, because the documents of incorporation included false statements in that the paper owners of the various professional corporations did not in fact own and operate them. Instead, the straw owners incorporated them for the purpose of allowing the real owners to bill insurance companies, the intended victims of the fraud.

defendants' first request for a bill of particulars should therefore be denied as moot.

With respect to their second request for specification of the false and fraudulent representations to the insurance companies, while the defendants have styled their motion as a request for a bill of particulars pursuant to Rule 7(f), their request for the specifics of every false statement is in fact an attempt to compel a preview, eight months in advance, of the Government's case at trial, and therefore not a proper request for a bill of particulars.  Moreover, the detail about the false statements that the defendants claim they lack is already available to them through the Indictment, the discovery, and the other documents in which the Government has explained its theory of the fraud.

    **1.**    **Applicable Law**

It is well established that the proper scope and function of a bill of particulars is to provide sufficient information about the nature of the charge to enable a defendant to prepare for trial, to avoid unfair surprise, and to preclude a second prosecution for the same offense.  Fed R. Crim. P. 7(f); *United States* v. *Torres*, 901 F.2d 205, 234 (2d Cir. 1990).  "A bill of particulars should be required only where the charges of the Indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States* v. *Chen,* 378 F.3d 151, 163 (2d Cir. 2004)  (internal quotation marks and citation omitted); *Torres*, 901 F.2d at 234.  If the information the defendant seeks "is provided in the indictment or in some acceptable alternative form," such as discovery, no bill of particulars is required.  *United States* v. *Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987); *United States* v. *Morales*, 280 F. Supp. 2d 262, 274 (S.D.N.Y. 2003).

Defendants cannot use a bill of particulars as a general investigative tool, *United States* v. *Salazar*, 485 F.2d 1272, 1277-78 (2d Cir. 1973), or as a device to compel disclosure of

the Government's evidence prior to trial, *see United States* v. *Gottleib*, 493 F.2d 987, 994 (2d Cir. 1974). "The Government is not required to disclose the manner in which it will attempt to prove charges, nor the means by which the crimes charged were committed, [therefore] 'the Government is not required to give information that would, in effect, give the defendant a preview of the Government's case before trial.'" *United States* v. *Triana-Mateus*, 98 Cr. 958 (SWK), 2002 WL 562649, at *5 (S.D.N.Y. Apr. 15, 2002) (quoting *United States* v. *Conley*, 00 Cr. 0816 (DAB), 2002 WL 252766, at *4 (S.D.N.Y. Feb. 21, 2002)); *see United States* v. *Cephas*, 937 F.2d 816, 823 (2d Cir. 1991); *Torres*, 901 F.2d at 233-34 (demands under request for bill of particulars for "whens" and "wheres" and "by whoms" within charged conspiracy are improper attempts at general pretrial discovery); *United States* v. *Muyet*, 945 F.Supp. 586, 598-99 (S.D.N.Y. 1996) ("[I]t is improper to use a bill of particulars to compel the Government to disclose the manner in which it will prove the charges or preview its evidence or legal theory." (quotation marks and citations omitted)). The ultimate test is whether the information sought through a bill of particulars is necessary, not whether it is helpful. *United States* v. *Tripe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001).

      **2.**      **Discussion**

      The Indictment in this case describes the charges in more than sufficient detail for the defendants to prepare for trial. It carefully and thoroughly sets out the two theories of the fraud of the Government will pursue at trial: (1) the fraudulent incorporation of the professional corporations under which the No-Fault and Modality Clinics billed the insurance companies, (Indictment ¶¶ 5-7), and (2) the systematic provision of medically unnecessary treatments at the No-Fault and Modality Clinics, (Indictment ¶ 4). The Indictment also provides additional detail about how the scheme executed both aspects of the fraud. For instance, it sets out in detail the

steps the clinic controllers would take to direct the licensed medical professionals to open and run a fraudulently incorporated medical clinic, including incorporating the required professional corporation, opening a bank account for the clinic, and signing the bills for treatments. (Indictment ¶¶ 6-7).  The Indictment also describes the financial relationship between the controllers and the licensed medical practitioners who were the paper owners of the clinics, noting that controllers paid the medical professionals a fee and/or a salary, and furthermore notes the various tasks that the controllers would undertake on their own, including providing the funds to establish the clinics, finding locations for the clinics and receiving most of the profits. (Indictment ¶¶ 6-7).

Similarly, with respect to the Government's other theory of fraud, the systematic provision of medically unnecessary treatments, the Indictment explains that it was the No-Fault Clinic Controllers who directed the No-Fault Doctors to bill for excessive and unnecessary treatments.  (Indictment ¶ 6).   The Indictment also explains that the No-Fault Clinic Controllers profited from the unnecessary treatments in at least two ways: from the profits of the No-Fault Clinics (which they retained rather than the No-Fault Doctors), (Indictment ¶ 7), and from kickbacks that the Modality Clinic Controllers paid the No-Fault Clinic Controllers, (Indictment ¶ 7).  This scheme created a system in which the motivation for medical treatments had no connection to medical necessity, which ultimately is demonstrated in the similarity of treatments and referrals provided to each patient at the No-Fault Clinics.  (Indictment ¶ 7).[3]

---

[3] The Government anticipates that its proof of the necessity of medical treatments at trial will focus on evidence that demonstrates that the treatments were supplied without regard to medical necessity and not on a patient-by-patient analysis of the treatments provided.  Put differently, even if, in some cases, the patients might have benefitted from treatments they received, the Government will argue that the beneficial treatments were fraudulent if they were provided as part of treatment regime that provided the same treatments to all patients,

Finally, the Indictment makes clear that the Government's two theories of fraud are not mutually exclusive, but in fact are complementary, and also each independently sufficient to support a conviction. For instance, as set forth in the Indictment, in return for the No-Fault Doctor's salary, the No-Fault Clinic Controllers expected the No-Fault Doctors to make unnecessary prescriptions and referrals. (Indictment ¶ 6). This demonstrates both that the No-Fault Clinics were fraudulently incorporated (because the controllers were controlling the treatments that were provided, not the doctors), and were providing unnecessary treatments (because the treatments were being prescribed based on the controllers desire to maximize profits and not the needs of the individual patients).

Though the Indictment alone is sufficient to advise the defendants "of the specifics acts of which [they are] accused," *Torres*, 901 F.2d at 234, the defendants have additional details about the nature of false statements and each defendants' role in the scheme through the discovery, including the wiretap affidavits and linesheets, the search warrant affidavits, the patient records, corporate records, bank records, the patient ledgers during the investigation, and the chart of professional corporations, as well as the Detention Motion. While each of the these additional sources of information are, by themselves, useful in apprising the defendants of the nature of the charges against them, they are particularly effective in providing evidentiary detail when viewed together in conjunction with the Indictment. For instance, the Indictment alleges that the medical clinics systematically provided unnecessary treatments. (Indictment ¶ 4). The Detention Memorandum provides further details about a "standard, usually uniform schedule of treatment" that was implemented at the No-Fault Clinics and the

---

irrespective of medical need.

Government has turned over treatment log books from various medical clinics and patients records in discovery that demonstrate that patients at the clinics did in fact receive identical or nearly identical sets of treatments.

The defendants ignore, either in whole or in part, the various sources of information available to them. With respect to the Indictment, for instance, the defendants make passing reference to "an allegation of 'fraudulently incorporated entities,'" (Defendants' Motion 3), but fail to discuss all of the specific allegations regarding the relationships of the controllers and the medical professionals discussed above. Those highly specific allegations are exactly the sort of detail that allows the defendants to know with precision what they are charged with in this case, and their failure to address those specifics suggest that the defendants' motion is not truly motivated by any real confusion as to the charges against them.

The defendants' discussion of the discovery is similarly undiscerning and dismissive. While the defendants are correct that the discovery in the case is voluminous and that voluminous discovery does not, by itself, obviate the need for a bill of particulars, the defendants seem unwilling to acknowledge the extent to which the Government has assisted them by making the discovery accessible and searchable. Furthermore, in conjunction with the chart of professional corporations provided herein, the defendants can now cross-check the incorporating documents, bank records, and patient records for those professional corporations to further discern the specific allegations against them.

Moreover, the defendants fail to even discuss the Detention Motion and whole other categories of evidence that will assist them in understanding this case, including the clinic log books and patient records turned over in discovery, which offer further detail of the unnecessary treatment theory of fraud, or the signature stamps, corporate records, and bank

11

records for the various professional corporations, which serve to further specify the fraudulent incorporation theory of fraud.  The defendants' failure to even acknowledge the existence of the Detention Motion, which laid out in detail and in plain language the mechanics of both the fraudulent incorporation and unnecessary treatments theories, or these additional types of evidence, further undermines their asserted need for a bill of particulars.

Finally, the defendants' reliance on the Second Circuit's decision in *Bortnovsky*, 820 F.2d 572, is unavailing.  In *Bortnovsky*, the defendants were charged with having fabricated insurance claims with respect to burglaries that did not in fact take place.  Despite providing over 4,000 documents relating to fifteen burglaries, at trial the Government only sought to prove that four burglaries were fabricated and only identified three documents as false.  As explained above, it is hard to imagine a case that is more factually inapposite to *Bortnovsky* than this case.  Unlike *Bortnovsky*, this is not a case where there are a few false statements hidden among a larger course of legitimate dealing.  Instead, the fraud here is pervasive: at trial the Government will argue that all of the 133 professional corporations here were fraudulently incorporated and all of the various No-Fault and Modality Clinics provided unnecessary treatments.  Given the consistency and extent of the fraudulent conduct, there is simply no basis to conclude that the defendants need any additional particularization of the false statements to prepare for trial, or that such particularization would even meaningfully assist the defendants in their trial preparations.

**C.	Conclusion**

   For the foregoing reasons, the defendants' motion for a bill of particulars should be denied.

            Respectfully submitted,

            PREET BHARARA
            United States Attorney
            Southern District of New York

    By:    /s/
            Daniel S. Goldman
            Nicholas L. McQuaid
            Carolina A. Fornos
            Assistant United States Attorneys
            (212) 637-2200