UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
UNITED STATES OF AMERICA
:
   - v. -                                  S13 12 Cr. 171 (JPO)
:
MIKHAIL ZEMLYANSKY et al.,
:
      *Defendants*,
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## GOVERNMENT'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS REQUESTS TO CHARGE

                                              PREET BHARARA
                                              United States Attorney for the
                                              Southern District of New York
                                              One St. Andrew's Plaza
                                              New York, New York 10007

DANIEL S. GOLDMAN
EDWARD Y. KIM
PETER M. SKINNER
DANIEL S. NOBLE
Assistant United States Attorneys
      - Of Counsel -

The Government respectfully submits this memorandum of law in support of its proposed jury charge regarding the issue of ownership of the various medical clinics relevant to this case. Trial is currently scheduled for September 9, 2013. As detailed below, in denying the defendants' motion to dismiss the "fraudulent incorporation" prong of the mail fraud and health care fraud counts, the Court rejected the defendants' argument that the incorporating medical practitioners were, as a matter of law, the true owners of the medical clinics, and instead recognized that "the question of 'ownership' is considered a question of fact, or a mixed question of law and fact" for the jury to determine. *United States* v. *Zemlyansky*, — F. Supp. 2d —, 2013 WL 2151228, at *7 (S.D.N.Y. May 20, 2013); *see also id.* ("Thus, the question of who actually owned the PCs at the time the NF3 forms were filled out—and, by extension, the question whether Defendants misrepresented the identity of the owners—is properly viewed as one for the jury, to be answered based on the evidence presented at trial.").

To assist the jury in making such a determination, the Government's proposed charge on the issue of ownership is drawn from caselaw in the civil context that is applicable to the issue of determining whether clinics have been fraudulently incorporated. Specifically, the Government's proposed charge incorporates a non-exhaustive list of factors that jurors can consider when evaluating whether the clinics at issue were in fact owned and controlled by non-physicians, rather than the nominal physician owners who were listed on the formal documents of incorporation.

## BACKGROUND

As set forth in its prior submissions to the Court, the Government intends to prove at trial that the defendants participated in a scheme to defraud automobile insurance companies

1

through New York's No Fault Comprehensive Motor Vehicle Insurance Reparation Act (the "No-Fault Law"). N.Y. Ins. Law § 5101 *et seq*. This scheme encompassed both the billing of medical treatments that were either (i) never provided, (ii) medically unnecessary, and/or (iii) over-billed, as well as the fraudulent incorporation of medical clinics.

With respect to the fraudulent incorporation of medical clinics, the Government expects to introduce evidence at trial to prove that, although medical practitioners were the paper, or straw owners, of the clinics, in reality the clinics were owned, operated and controlled by non-physicians. As the Government will prove at trial, the misrepresentation concerning the ownership of the clinics was material because under the No-Fault Law, insurance companies would not have reimbursed any billing from a medical clinic that was not owned, operated and controlled by a physician.

Accordingly, the Government proposes that jurors be given the following charge with respect to determining whether the clinics were fraudulently incorporated:

> In this case, with respect to the health care fraud and mail fraud charges, the Government alleges that the defendants engaged in a scheme to defraud insurance companies by making two different misrepresentations, either of which, if proven beyond a reasonable doubt, will satisfy the first element of both health care fraud and mail fraud — namely that there was (a) a scheme or artifice to defraud; or (b) a scheme or artifice to obtain money or property by false and fraudulent pretenses, representations or promises.
>
> First, the Government alleges that the defendants made false representations to insurance companies that medical clinics were owned by licensed medical practitioners, when in fact they were owned, controlled and operated by non-physicians. And second, the Government alleges that the defendants submitted or caused to be submitted fraudulent insurance claims for medical treatments that were either (i) never provided, (ii) unnecessary or excessive because the patients did not medically need the treatments; and/or (iii) billed for more serious treatments than the patients received.

2

I will now address the first type of misrepresentation regarding the ownership of the medical clinics. I instruct you as a matter of law that all medical clinics in New York State must be owned, controlled and operated by a medical practitioner (or medical practitioners) who are licensed to practice medicine by the State of New York. In addition, in order for a medical clinic in New York State to be eligible for reimbursement under the state's no-fault automobile insurance program, the medical clinic must be owned, controlled and operated by a licensed medical practitioner (or medical practitioners).

In this case, the Government alleges that even though medical clinics were incorporated in the State of New York by licensed medical practitioners, those medical clinics were not owned, controlled and operated by those licensed medical practitioners. As a result, representations to insurance companies that those clinics were owned by licensed medical practitioners were false.

To find that a clinic was owned and operated by a non-physician, you must find that the non-physician was so intertwined in the affairs of the clinic that a reasonable person would say the non-physician was a de facto owner of the clinic or exercised substantial control over the clinic. The crucial question is whether the non-physician exercised substantial control over the clinic's business and was not merely an employee of the clinic.

In determining who was the actual owner of the medical clinics involved in this case, you should consider the totality of the circumstances and weigh all relevant factors. Some factors you may want to consider include:

- Who funded, or invested in, the clinic;
- Who chose the location of the clinic and negotiated contracts associated with the clinic, such as a lease;
- Who received the profits generated by the clinic;
- Who controlled the assets of the clinic, including the clinic bank accounts;
- For what purposes clinic funds were used, that is, whether they were used for personal or business purposes, and by whom;
- Who made decisions concerning the hiring, firing, and compensation of clinic employees;

3

- Who handled the day-to-day operation and management of the clinic, including who was regularly present at the clinic;
- Who arranged for, and recruited, the patients treated at the clinic;
- Whether other individuals were used to recruit patients and, if so, whether kickback payments were made to those individuals, and by whom;
- Whether kickback payments were paid for patient referrals and between whom;
- Whether and to what extent non-physicians played a role in the medical practice of the clinic.

## ARGUMENT

Under the No-Fault Law, automobile insurance companies are required to reimburse all drivers and passengers for "basic economic loss on account of personal injury arising out of the use or operation of a motor vehicle," up to $50,000, for "all necessary expenses." N.Y. Ins. Law §§ 5102(a), (b). Under applicable regulations, an insured may assign his or her benefits directly to the health care provider, which can receive direct payment for the services provided. 11 N.Y.C.R.R. § 65-3.11(a). "A provider of health care services is not eligible for reimbursement under section 5102(a)(1) of the Insurance Law if the provider fails to meet any applicable New York State or local licensing requirement necessary to perform such service in New York or meet any applicable licensing requirement necessary to perform such service in any other state in which such service is performed." 11 N.Y.C.R.R. § 65-3.16(a)(12). The New York State Department of Education is authorized to issue a certificate of authority to a "qualified professional services corporation," including a medical practice that is organized under Section 1503 of the New York Business Corporation Law. N.Y. Educ. Law § 6507(4)(c). Section 1503 sets forth certain requirements for the certificate of incorporation, including that it

4

state the names of any shareholders, directors, and officers and that a certification be attached that each of the people named is authorized by law to practice the profession that the corporation is authorized to practice. The upshot of these and other applicable regulations is that "New York licensing requirements are structured so as to 'prohibit non-physicians from owning or controlling medical services corporations.'" *Zemlyansky*, 2013 WL 2151228, at *3 (quoting *State Farm Mut. Auto. Ins. Co.* v. *Mallela*, 4 N.Y.3d 313, 320–21 (N.Y. 2005)).

With respect to the issue of ownership, the New York Court of Appeals has made clear that nominal ownership is not enough. *See Mallela*, 4 N.Y.3d at 321 (holding that insurers "may look beyond the face of licensing documents to identify willful and material failure to abide by state and local law," including violations of the laws prohibiting the ownership or control of medical services corporations by non-physicians). In *Mallela*, the insurer alleged that "unlicensed defendants paid physicians to use their names on paperwork filed with the State to establish medical service corporations. Once the medical service corporations were established under the facially valid cover of the nominal physician-owners, the non-physicians actually operated the companies." *Id.* at 319. The court in *Mallela* noted that assuming these allegations were true, then the medical companies "undisputably fail to meet the applicable state licensing requirements, which prohibit non-physicians from owning *or controlling* medical service corporations." *Id.* at 320-21 (emphasis added).

Consistent with *Mallela*, courts have recognized that the issue of whether a non-physician owns or controls a medical services corporation is a "highly fact-intensive" inquiry. *New York Central Mut. Ins. Co.* v. *McGee*, 25 Misc.3d 1232(A) (Sup. Ct. Kings Cty. 2009). In *Carothers* v. *Insurance Cos. Represented by Bruno Gerbino & Soriano, LLP*, 26 Misc.3d 448

5

(N.Y. Civ. Ct. 2009), the court adopted such an approach when instructing the jury on the issue of fraudulent incorporation. There, "[i]n determining whether or not [the non-physicians] owned and/or controlled [the medical services corporation], the jury was told that they should consider the totality of the circumstances and weigh all relevant factors including a list of nonexclusive factors that was read to them." *Id.* at 455. These factors included, among others: the extent to which non-physicians "exercised dominion and control over the assets of [the medical services corporation], including the corporation's bank accounts;" the extent to which the corporation was capitalized by non-physicians; the degree to which corporation funds were used by non-physicians for personal purposes; whether non-physicians had the ability to enter into legal obligations between the corporation and third parties; the extent to which non-physicians were "responsible for the hiring, firing and/or payment of salaries of the medical professional corporation's employees and whether and the extent to which they dictated policy decisions;" the degree to which the physician "played a substantial role in the day-to-day and overall operation and management of the medical professional corporation;" and the extent to which non-physicians "played a role in the professional decisionmaking of the corporation." *Id.* at 464, n.1.

As *Mallela* and its progeny have made clear, resolving the issue of ownership is not limited to simply examining documents of incorporation and other "official" indicia of ownership. Rather, jurors should consider the totality of the circumstances to evaluate whether the nominal, physician owners were in fact the true owners of the clinics or whether they were simply straw owners, thereby making the uniform representation to insurance companies that the physicians "owned" the medical clinics a materially false one. In order to make this

6

determination, jurors should be instructed to consider the factors set forth in the Government's proposed charge, which are consistent with caselaw.

## CONCLUSION

For the reasons stated above, the Government respectfully requests that the Court deliver the charge proposed by the Government.

Dated:      New York, New York
            July 26, 2013

                                    Respectfully submitted,

                                    PREET BHARARA
                                    United States Attorney
                                    Southern District of New York


                                By:            /s/
                                    Daniel S. Goldman
                                    Edward Y. Kim
                                    Peter M. Skinner
                                    Daniel S. Noble
                                    Assistant United States Attorney
                                    Southern District of New York
                                    (212) 637-2289/2401/2601/2239