UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

UNITED STATES OF AMERICA,

    -against-

MIKHAIL ZEMLYANSKY, et al.,

                Defendants.

-------------------------------------------------------------X

**MEMORANDUM
OF LAW**

12 Cr. 171(JPO)

_____

### DEFENDANT MIKHAIL ZEMLYANSKY'S
### MOTION FOR SEVERANCE

_____

RONALD P. FISCHETTI, ESQ.
FISCHETTI & MALGIERI LLP
*Attorney for Defendant*
*MIKHAIL ZEMLYANSKY*
747 Third Avenue
20th Floor
New York, New York 10017
(212) 593-7100
(212) 758-2809 fax
www.fischettilaw.com

ERIC FRANZ, ESQ.
LAW OFFICES OF ERIC FRANZ, P.L.L.C.
*Attorneys for Defendant*
*MIKHAIL ZEMLYANSKY*
747 Third Ave.,
20th Floor
New York, New York 10017
(212) 355-2200
(212) 937-2217 fax
www.efranzlaw.com

ANDREW MANCILLA, ESQ.

## TABLE OF CONTENTS

**Table of Authorities**…………………………………………..………..….…..3

**Preliminary Statement**………………………………………………………...4

**Statement of Facts**……………………………………………………………..5

**Legal Standard for Severance**………………………………………………...6

**Arguments**………………………………………………………………......7

      I.      Zemlyansky Is Entitled to a Severance Because Admission of
Danilovich's Post-Arrest Statements Will Violate Zemlyansky's Sixth
Amendment Right of Confrontation ……………………………….....….....7

      A.      The Court Should Grant Zemlyansky Severance
In Order To Enforce His Sixth Amendment Rights
Because Danilovich's 302 Statement Clearly and
Powerfully Implicates Zemlyansky. …………………………….…...10

      B.      The Court Should Grant Zemlyansky Severance
From His Joint Trial With Danilovich Because A
Redaction of the 302 Statement Will Not Suffice
to Cure The Prejudice. ……………………………….....…...........15

      II.      Defendant Zemlyansky's Case Should be Severed To Prevent The
Substantial Risk of Prejudicial Spillover and Wrongful Conviction..…………...17

**Conclusion**…………………………………………………………….....…21

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Bruton v. United States*, 391 U.S. 123 (1968) .......................................................... passim

*California v. Green,* 399 U.S. 149 (1970) ...................................................................... 7

*Cruz v. New York*, 481 U.S. 186 (1987)......................................................................... 8

*Gray v. Maryland*, 523 U.S. 185 (1998).............................................................. 8, 10, 16

*Kotteakos v. United States*, 328 U.S. 750 (1946)........................................................ 17

*Krulewitch v. United States*, 336 U.S. 440 (1949)....................................................... 20

*Lee v. Illinois*, 476 U.S. 530 (1986).............................................................................. 8

*Lilly v. Virginia,* 527 U.S. 116 (1999) ........................................................................... 8

*Maryland v. Craig*, 497 U.S. 836 (1990)....................................................................... 7

*Nash v. United States*, 54 F.2d 1006 (2d Cir. 1932) ................................................... 20

*Richardson v. Marsh*, 481 U.S. 200 (1987) .............................................................. 8, 14

*United States v. Feyrer*, 333 F.3d 110 (2d Cir. 2003) ................................................... 6

*United States v. Gallo*, 668 F. Supp. 736, 749 (E.D.N.Y. 1987)................................... 17

*United States v. Gatto*, 924 F.2d 491 (3d Cir. 1991) ................................................... 18

*United States v. Hatcher*, 680 F.2d 438 (6th Cir. 1982) ................................................ 6

*United States v. Lane*, 474 U.S. 438 (1986)................................................................ 17

*United States v. Mitchell*, 502 F.3d 931 (9th Cir. 2001)................................................. 9

*United States v. Saadey*, 393 F.3d 669 (6th Cir. 2005)................................................ 17

*United States v. Schwartz*, 541 F.3d 1331 (11th Cir. 2008)......................................... 10

*United States v. Spinelli*, 352 F.3d 48 (2d Cir. 2003) .................................................... 6

*United States v. Tutino*, 883 F.2d 1125 (2d Cir. 1989)................................................. 15

*United States v. Weisman*, 624 F.2d 1118 (2d Cir. 1980)............................................ 18

*Zafiro v. United States*, 506 U.S. 534 (1993)................................................... 6, 10, 18, 19

### <u>TREATISES</u>

5 WIGMORE, EVIDENCE § 1477 (J. Chadbourn rev. 1974) ............................................. 10

### <u>RULES</u>

Fed. R. Crim.P. 14(a) ............................................................................................... 6, 22

Fed. R. Evid. 403 ................................................................................................ 4, 18, 19

## PRELIMINARY STATEMENT

Mikhail Zemlyansky ("Zemlyansky") herein moves for a severance from his codefendant Michael Danilovich ("Danilovich") pursuant to Rule 14 of the Federal Rules of Criminal Procedure on two grounds.

First, if Zemlyansky is not granted a severance from his joint trial with Danilovich, Zemlyansky will be denied his Sixth Amendment right of confrontation because the government will seek to introduce Danilovich's facially incriminating post-arrest confession.  Redaction pursuant to *Bruton v. United States*, 391 U.S. 123 (1968) will not sufficiently cure the degree to which the statement incriminates Zemlyansky.  Severance is therefore warranted to preserve Zemlyansky's Sixth Amendment right of confrontation.

Second, an analysis of the prejudicial impact of Danilovich's post arrest confession under Federal Rule of Evidence 403 militates in favor of a severance.  Although not admissible against Zemlyansky, the statement is fraught with details of the fraudulent scheme in which Zemlyansky and Danilovich are implicated.  As such, the admission of any portion of Danilovich's statement will severely prejudice Zemlyansky's case and deprive him of a fair trial.  Severance is therefore warranted to protect Zemlyansky's right to a fair trial.

Notably we raise this motion now, as opposed to January 18, 2013 when motions were due, because we only just became aware of Danilovich's statements.  Danilovich's post-arrest confession was turned over to our office by the government on July 31, 2013.[1]

---

[1] Although the government may have provided this post-arrest confession to counsel for Danilovich on May 18, 2012, as promised in its Rule 16 Discovery letter dated May 15, 2012, counsel for Danilovich did not share this confession with counsel for Zemlyansky.

Indeed, had we known about Danilovich's confession earlier, this motion would have been submitted already.

## STATEMENT OF FACTS

The government's "fraudulent incorporation" theory, with which they are proceeding to trial, is that Zemlyansky, in partnership with Danilovich (both non-physicians), owned, operated, and controlled no-fault and modality medical clinics and fraudulently represented to insurance companies that the clinics were owned by doctors. Both the original Indictment,[2] and the Superseding Indictment (S 13),[3] contain allegations that Zemlyansky owned, operated, and controlled no-fault and modality medical clinics. Additionally, the government's motion for pretrial detention[4] reiterates the government's fraudulent incorporation theory and represents to the Court the evidence in support of that theory.

On July 31, 2013, in anticipation of trial, the government provided defense counsel with an FBI 302 report[5] that reflected Danilovich made a post-arrest confession. The FBI 302 report contains, *inter alia*, the following statements by Danilovich:

1. Though a doctor was listed as the owner of the "PC," DANILOVICH owned, operated, and controlled the clinic. DANILOVICH needed the doctor in order to bill the health insurance companies. DANILOVICH knew the doctor's role in the clinic was fraudulent.

2. DANILOVICH owned, operated, and controlled MRI clinic PCs named CLEARVIEW and KKM. DANILOVICH stated that "I knew the MRI was a fraud." DANILOVICH controlled all finances of these PCs.

3. DANILOVICH was a partner and owner in the "ATLANTIC CLINIC." DANILOVICH owned, operated, and controlled the "UTICA CLINIC.

*Ex. D.*

---

[2] The relevant portions of the original indictment are annexed hereto as Exhibit A.
[3] The relevant portions of the Superseding Indictment (S 13) are annexed hereto as Exhibit C.
[4] The relevant portions of the government's motion for detention are annexed hereto as Exhibit B.
[5] Annexed hereto as Exhibit D.

On August 9, 2013 the government filed its Motions in Limine,[6] which contain representations that at trial it will admit evidence that links Zemlyansky to the Clearview and Atlantic Avenue no-fault medical clinics.

Zemlyansky and Danilovich are scheduled to be tried jointly in trial group one. Danilovich will not be testifying.

## LEGAL STANDARD FOR SEVERANCE

A district court may order severance when joinder of co-defendants in an indictment appears to prejudice a defendant. Fed.R.Crim.P. 14(a); *United States v. Spinelli*, 352 F.3d 48, 54 (2d Cir. 2003); *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003). Risk of prejudice occurs "when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a co-defendant." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). A motion for severance under Rule 14 requires a court to balance judicial efficiency against the potential for prejudice. *United States v. Hatcher*, 680 F.2d 438, 442 (6th Cir. 1982). "The risk of prejudice associated with joinder varies with the facts of each case." *Feyrer*, 333 F.3d at 114. Where the risk of prejudice is high, the Court should grant a motion to sever. *Zafiro*, 506 U.S. at 539.

---

[6] The relevant portions of the Government's Motions in Limine are annexed hereto as Exhibit E.

**ARGUMENTS**

**I.**

**ZEMLYANSKY IS ENTITLED TO
SEVERANCE BECAUSE ADMISSION
OF DANILOVICH'S POST-ARREST STATEMENTS
WILL VIOLATE ZEMLYANSKY'S SIXTH
AMENDMENT RIGHT OF CONFRONTATION**

In all criminal prosecutions, state and federal, the accused has a right, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, "to be confronted with the witnesses against him." U.S. Const., Amdt. VI. The right of confrontation includes the right to cross-examine. "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990).

The Supreme Court has carefully enforced the protections of the 6th Amendment when examining cases in which the government seeks to offer a co-defendant's confession at trial, implicating another defendant in the joint trial. In particular, the court must ensure that none of the co-defendants' constitutional rights are compromised.

According to the Supreme Court, a defendant's Sixth Amendment right of cross-examination is violated when a non-testifying co-defendant's confession, implicating the defendant, is introduced at their joint criminal trial. *Bruton v. United States*, 391 U.S. 123 (1968). *Bruton*'s Sixth Amendment protections are the hallmark for an equitable joint criminal trial. As the Supreme Court acknowledged, there is no recognized exception to the hearsay rule that would permit the trier of fact to consider a non-testifying co-defendant's confession against another defendant. *Id.,* 391 U.S. at 128 n.3.

When the government seeks to offer a declarant's out-of-court statements against the accused, and the declarant is unavailable, the court is required to determine whether the Confrontation Clause permits the government to deny the accused his right to force the declarant "to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth.'" *California v. Green,* 399 U.S. 149, 158 (1970) (footnote and citation omitted).  The importance of protecting a defendant's Sixth Amendment right of confrontation cannot be overstated: presented with such issues, the court must ensure strict compliance with *Bruton* or hold *separate trials. See Gray v. Maryland*, 523 U.S. 185, 194 (1998) (stating that because the use of an accomplice's confession "creates a special, and vital, need for cross-examination," a prosecutor desiring to offer such evidence must comply with *Bruton,* hold separate trials, use separate juries, or abandon the use of the confession) (emphasis added); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) ("[W]here two defendants are tried jointly, the pretrial confession of one cannot be admitted against the other unless the confessing defendant takes the stand"); *Cruz v. New York*, 481 U.S. 186, 189-190, 193 (1987) (same).

It bears emphasis that the Supreme Court has "spoken with one voice in declaring presumptively unreliable accomplices' confessions that incriminate defendants." *Lee v. Illinois*, 476 U.S. 530, 541 (1986); *See also Cruz*, 481 U.S., at 195 (White, J., dissenting) (such statements "have traditionally been viewed with special suspicion"); *Bruton*, 391 U.S., at 136 (such statements are "inevitably suspect"). As the Supreme Court noted in *Lilly*, "[w]igmore's treatise still expressly distinguishes accomplices' confessions that inculpate themselves and the accused as beyond a proper understanding of the against-penal-interest exception" because an accomplice often has a considerable interest in

"confessing and betraying his cocriminals." *Lilly v. Virginia,* 527 U.S. 116, 131 (1999)
(*citing* 5 WIGMORE, EVIDENCE § 1477, at 358, n. 1 (J. Chadbourn rev. 1974)).

Here, Danilovich was interviewed by two FBI agents following his arrest on
February 29, 2013. According to the FBI 302 report and the agents' notes, Danilovich
made a number of post-arrest statements. While all of the statements are incriminating to
both Danilovich and Zemlyansky because they describe how the alleged scheme began
and thereafter operated, the following are particularly troublesome:

> Though a doctor was listed as the owner of the "PC,"
> DANILOVICH owned, operated, and controlled the clinic.
> DANILOVICH needed the doctor in order to bill the health
> insurance companies. DANILOVICH knew the doctor's role in the
> clinic was fraudulent.

> DANILOVICH owned, operated, and controlled MRI clinic PCs
> named CLEARVIEW and KKM. DANILOVICH stated that "I
> knew the MRI was a fraud." DANILOVICH controlled all finances
> of these PCs.

> DANILOVICH was a partner and owner in the "ATLANTIC
> CLINIC." DANILOVICH owned, operated, and controlled the
> "UTICA CLINIC.

*Ex. D.*

There is no doubt that the government will seek to introduce all of Danilovich's
statements against him at the joint trial with Zemlyansky.  However, these statements
directly incriminate Zemlyansky, and since counsel has already been advised Danilovich
will not be taking the stand, Zemlyansky will be denied his Sixth Amendment right of
confrontation.  The Court should enforce Zemlyansky's right of confrontation and Order
a severance in this case.

**A.** **The Court Should Grant Zemlyansky Severance In Order To Enforce His Sixth Amendment Rights Because Danilovich's 302 Statement Clearly and Powerfully Implicates Zemlyansky.**

Under *Bruton* and its progeny, the admission of a statement made by a non-testifying codefendant violates the Confrontation Clause when that statement "facially, expressly, *clearly*, or *powerfully implicates* the defendant." *United States v. Mitchell*, 502 F.3d 931, 965 (9th Cir. 2001) (emphasis added); *see also Gray*, 523 U.S. at 186-87 (1998) (incriminating identifiers, such as nicknames and unique descriptions, fall inside *Bruton's* protection). It is for this reason that the protections enumerated under *Bruton* are paramount in this case and militate in favor of suppression.[7] The Supreme Court instructed that a motion for severance of a defendant should be granted where there exists "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.

Although not binding, the Court may consider the 11th Circuit's holding in *United States v. Schwartz*, 541 F.3d 1331, 1351 (11th Cir. 2008) in determining the admissibility of the statement. In *Schwartz,* the court held that, "a defendant's confrontation right is violated when the court admits a codefendant statement that, in light of the Government's whole case, compels a reasonable person to infer the defendant's guilt." *Schwartz*, 541 F.3d at 1351 (finding that defendant Schwartz's case warranted a *Bruton* severance

---

[7] *Bruton* applies only where co-defendants are tried jointly, and is inapplicable when the non-testifying codefendant is severed out. *See United States v. Briscoe*, 742 F.2d 842, 847 (5th Cir. 1984) ("For *Bruton* to apply, however, there must be a joint trial with co-defendants. Briscoe's trial was severed from that of the other defendants; thus *Bruton* is inapplicable."); *see also United States v. Mitchell*, 502 F.3d 931, 965 (9th Cir. 2007) (*Bruton* does not apply in severed case).

because the government's evidence equated the individual with his corporation, which was specifically incriminated by co-defendant's statements.).

*Schwartz* was a criminal defendant in a joint-trial for various fraud and theft-related offenses, including fraudulent sales of high-yield promissory notes and co-mingling funds.  *Id.* at 1332. The government presented a co-defendant's confession against Schwartz particularly related to his corporation.  *Id.* at 1332-1333. The court found that the Confrontation Clause was violated by admission of a nontestifying codefendant's statement that did not inculpate defendant by name, but instead, named corporations he owned or controlled. *Id*. at 1352-1354.

Since the inception of this case, the government has proceeded with their fraudulent incorporation theory on the basis that Zemlyansky, in partnership with Danilovich, owns, operates, and controls no-fault and modality medical clinics. The Indictment charges the following:

> [T]he No-Fault Clinics were not owned, operated, and controlled by a licensed medical practitioner; instead, the actual owners, operators, and controllers of the No Fault Clinics were individuals who were not licensed medical practitioners and who were not identified on documents filed with New York State authorities (the "No-Fault Clinic Controllers").

*Ex. A*.

> …ZEMLYANSKY and DANILOVICH were Modality Controllers for two MRI clinics in Brooklyn, New York, as well as for numerous acupuncture and chiropractic clinics in and around New York City.

*Id*. at 12.

Further, in the government's motion for pretrial detention it made the following allegations:

> Mikhail Zemlyansky and Michael Danilovich are two of the leaders of the Defendant's No-Fault Organization. Together they controlled two No-Fault Clinics, several Modality Clinics, and two billing and collection offices.

*Ex. B* at 13.

More recently, the Superseding Indictment (S 13) reiterated the government's theory of fraudulent incorporation:

> ZEMLYANSKY and DANILOVICH were No-Fault Clinic Controllers of multiple medical clinics located in and around Brooklyn, New York, which referred Patients to other Modality Clinics. Some of the Modality Clinics were owned, operated, and controlled by ZEMLYANSKY and DANILOVICH, including two MRI clinics in Brooklyn, New York, as well as numerous acupuncture and chiropractic clinics in and around New York City.

*Ex. C* at 11.

Finally, on August 9, 2013 the government filed the Government's Motions in Limine which contain the following representations:

> CW-1 will also testify that Zemlyansky told the witness that Zemlyansky and Danilovich used the money they obtained, in part, through the Lyons Ward scheme to purchase their first *MRI facility on Ocean Parkway (i.e., Clearview MRI)*.
>
> Sukhman will testify to discussions he had with Zemlyansky about using the location of the Joseph Vitoulis clinic on Atlantic Avenue in Brooklyn (the "*Atlantic Avenue Clinic*") for a Medicare/Medicaid clinic after the Atlantic Avenue Clinic closed in the summer of 2011.
>
> Sukhman will testify that he saw a printed article at the *Atlantic Avenue Clinic* about the suspension of Vitoulis's medical license for fraudulent billing. Sukhman will testify that he, Shuman, and Zemlyansky confronted Vitoulis about the suspension – they were worried it would cause red flags with the insurance companies – and Vitoulis admitted that his license had been temporarily

> suspended because one of his billers had fraudulently billed insurance companies.

*Ex. E* at 7-8, 19 (emphasis added).

In its Motions in Limine, the government also represented that it will introduce evidence relating to the "partnership of Zemlyansky, Danilovich, Shuman, and Sukhman in owning and operating the *Atlantic Avenue Clinic*." *Ex. E* at 13 (emphasis added).

The above allegations, coupled with the proffered evidence the government plans to introduce at trial, inextricably tie Zemlyansky to the Atlantic and Clearview no-fault and modality medical clinics that the government alleges were fraudulent. Therefore, there can be no doubt that Danilovich's statements that implicate the no-fault medical clinics, equally implicate Zemlyansky, specifically those statements that refer to the Atlantic and Clearview medical clinics.[8]

In light of the allegation that Zemlyansky owned, operated and controlled MRI clinics in Brooklyn, and the government's proffered evidence that Zemlyansky purchased the Clearview MRI clinic, introduction of Danilovich's statement that the MRI scans were fraudulent directly incriminates Zemlyansky in the health care fraud conspiracy.

Further, since the government's fraudulent incorporation theory is premised on the allegation that Zemlyansky owned, operated, and controlled the clinics with Danilovich, and the evidence it presents at trial will allegedly show Zemlyansky was a partner in the ownership of the Atlantic no-fault clinic, Danilovich's post arrest statement that Danilovich was a partner and owner of the Atlantic medical clinic incriminates

---

[8] There is other evidence the government has turned over to counsel that also links Zemlyansky to the Utica medical clinic. As such, Danilovich's statement regarding owning and controlling Utica would also incriminate Zemlyansky because it essentially confesses that the Utica clinic was fraudulently incorporated.

Zemlyansky because it indicates the clinic was indeed fraudulently incorporated since at least one of the owners was Danilovich, a non-physician.

Even assuming Your Honor finds that the Danilovich's statements are not facially incriminating of Zemlyansky in light of the evidence the government has already indicated it will produce at trial, the statements will undoubtedly *become* incriminating once the government introduces the other evidence it *has already outlined that it has against Zemlyansky*. As the government represented in its Motion for Detention:

> The evidence against Zemlyansky and Danilovich is strong, and includes: (1) testimony from cooperating witnesses who dealt with them regularly in connection with the No Fault Organization's activities, and who can testify about Zemlyansky and Danilovich's participation in the charged no-fault insurance fraud since at least 2009; (2) recordings of extensive wiretap interceptions of telephone calls and text messages from their own cellular telephones between October 2010 and July 2011, which reveal their control of both No-Fault Clinics and numerous Modality Clinics and demonstrate their involvement in billing and collection for their own clinics as well as other Modality Clinics; (3) financial records demonstrating their control over several different clinics and a money trail connecting those clinics to shell companies that Zemlyansky and Danilovich control; and (4) law enforcement testimony and surveillance photographs showing Zemlyansky and Danilovich at various medical clinics and their interactions with various co-conspirators.

*Ex. B* at 15.

Certainly, this is not a case in which the Court needs to wait and see whether the evidence at trial links Zemlyansky to the medical clinics thereby rendering Danilovich's post-arrest statements incriminating. The government has already indicated its evidence of Zemlyansky's affiliation with the medical clinics is "strong." *Ex. B* at 15. Having revealed what evidence it will present, the government is "enabling the court to assess compliance with *Bruton ex ante* rather than *ex post. Richardson*, 481 U.S. at 209. In light

of such evidence, there can be no doubt that Danilovich's post-arrest confession — in which Danilovich states that the Atlantic and Clearview medical clinics were fraudulently incorporated, and that the MRI clinic was a fraud — will be "powerfully incriminating" and that Zemlyansky will not be afforded the ability to defend himself by cross examining Danilovich. *Id.*

Simply put, by virtue of the government's allegations and proffered evidence, any fraud alleged with regard to the Atlantic and Clearview medical clinics *clearly* and *powerfully* incriminate Zemlyansky. As such, severance is warranted.

### B.     The Court Should Grant Zemlyansky Severance From His Joint Trial With Danilovich Because A Redaction of the 302 Statement Will Not Suffice to Cure The Prejudice.

The Second Circuit has held that "a redacted statement in which the names of co-defendants are replaced by neutral pronouns, with no indication to the jury that the original statement contained actual names, and where the statement standing alone does not otherwise connect co-defendants to the crimes, may be admitted without violating a co-defendant's *Bruton* rights." *United States v. Tutino*, 883 F.2d 1125, 1135 (2d Cir. 1989).

However, the statements at issue are incriminating as a whole.  There are no portions of Danilovich's statement that may be admitted without incriminating Zemlyansky and violating his *Bruton* rights—redaction will not suffice.

For example, even assuming the medical clinic names were redacted and replaced with "neutral pronouns" as the *Tutino* case advises, the statement is fraught with language that will incriminate Zemlyansky.  Specifically, the FBI 302 contains five separate statements that Danilovich, a non-physician, "owned, operated, and controlled" various

medical clinics and a billing office. Redacting the clinic names from the FBI 302 would render the statements the government will seek to introduce as follows:

- DANILOVICH owned, operated, and controlled MRI clinic PC's named _____ and _____.

- DANILOVICH was a partner and owner in the "_____ CLINIC"

- DANILOVICH owned, operated, and controlled the "_____ CLINIC"

Therefore, in light of the government's allegations and evidence of Zemlyansky's inextricable association with medical clinics, a number of which Danilovich confesses were fraudulently incorporated, the *Bruton* violation remains despite redaction of the *names* of the clinics. Further, the Court does not encourage freelance editing of a confession in order to pass *Bruton* muster. *See Gray*, 523 U.S. at 203-204. ("[W]e have never before endorsed. . .the redaction of a statement by some means other than the deletion of certain words, with the face of the deletion shown. The risk to the integrity of our system . . .posed by the approval of such freelance editing seems to me infinitely greater than the risk posed by the entirely honest reproduction that the Court disapproves.").

For this Court to ensure that Zemlyansky's Sixth Amendment rights under *Bruton* are protected, a severance must be granted or the entire statement must be excluded—a redaction simply could not suffice to cure the unfair prejudices arising by the implication of the statements made.

## II.

## DEFENDANT ZEMLYANSKY'S CASE SHOULD BE SEVERED TO PREVENT THE SUBSTANTIAL RISK OF PREJUDICIAL SPILLOVER AND WRONGFUL CONVICTION

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."   Fed.R.Evid. 403.   Although Danilovich's post-arrest confession is not admissible against Zemlyansky under any rule of evidence, assuming the government introduces any portion of the FBI 302 statement at Danilovich's joint trial with Zemlyansky, the probative value of the statement is far outweighed by the prejudicial impact to Zemlyansky and thus militates in favor of severance under Federal Rule of Evidence 403.

In order to prevail on a motion for severance, a defendant must make a compelling showing of actual prejudice.  See, e.g., *United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005) ("In order to prevail on a motion for severance, a defendant must show compelling, specific, and actual prejudice from a court's refusal to grant the motion to sever."); *cf. United States v. Lane*, 474 U.S. 438, 449 (1986) (holding that misjoinder results in actual prejudice because it "had substantial and injurious effect or influence in determining the jury's verdict" (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946))).

In assessing whether severance is appropriate because the prejudice to a defendant arising from a joint trial would constitute a "miscarriage of justice," the Court should look to:

> the number of defendants and the number of counts; the complexity of the indictment; the estimated length of the trial; disparities in the amount or type of proof offered against the defendants; disparities in the degrees of involvement by the defendant in the overall scheme; possible conflicts between various defense theories or trial strategies; and *especially, prejudice from evidence admitted only against co-defendants but which is inadmissible or excluded as to a particular defendant.*

*See United States v. Gallo*, 668 F. Supp. 736, 749 (E.D.N.Y. 1987) (emphasis added). A trial court has almost unfettered discretion under Rule 14 to determine whether sufficient prejudice exists to warrant a severance; *United States v. Weisman*, 624 F.2d 1118, 1129-30 (2d Cir. 1980); and denial of severance is inappropriate where there is a great disparity in the amount of evidence between the moving defendant and the codefendants. *United States v. Gatto*, 746 F. Supp. 432, 445 (D.N.J. 1990), *rev'd on other grounds*, 924 F.2d 491 (3d Cir. 1991). In such instances, the relevant inquiry is whether the jury has the capacity to follow the trial court's limiting instruction requiring separate consideration for each defendant and the evidence admitted against the defendant. *Id*.

In *Zafiro,* the Court noted that "a district court should grant severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id*. at 539.

In its abuse of discretion analysis, the Court provided several non-exhaustive examples of potential prejudice, ultimately finding the petitioners in *Zafiro* had not established any prejudice and were thus not entitled to severance:

Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened. *Evidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice.*

Conversely, a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial.

The risk of prejudice will vary with the facts in each case, and district courts may find prejudice in situations not discussed here.

*Id.* at 539 (emphasis added). That last sentence highlights that the Court did not intend the *Zafiro* ruling to in any way constrain district court discretion, further lending support to Zemlyansky's contention that *Zafiro* is of limited precedential value and should generally be limited to its facts and legal posture.

Here, the Court needs to consider the implication on the fundamental fairness of Zemlyansky's trial by admitting Danilovich's FBI 302 statements. Despite the overlap of counts between Zemlyansky and Danilovich and the "efficiency and economy" that a single joint trial might afford the court, "fundamental fairness" requires that Zemlyansky's case be severed from a trial in which any portion of Danilovich's post-arrest confession is admitted into evidence. The substantial prejudice against Zemlyansky created by admitting Danilovich's statement is crystal clear.

Danilovich's statement implicates a number of medical clinics that the government alleges Zemlyansky controlled fraudulently. As the government indicates in its motion for detention, *see* Gov't.'s Mot. For Det. (*Ex. B*), the jury will hear the cooperating witnesses testify about Zemlyansky's extensive involvement in the

management and control of several medical clinics. *Ex.* E. Additionally, the government has indicated that it will present documents and wiretap recordings showing that Zemlyansky managed and controlled these medical clinics referred to by Danilovich and were inextricably intertwined with them. *Ex. B* at 15. These are compelling, specific, and actual instances of prejudice that will undoubtedly occur if any portion of the statement is admitted.

Finally, a limiting instruction will be inadequate to cure the prejudice. In general, limiting instructions are not per se adequate to cure such prejudice. "There are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Bruton*, 391 U.S. at 135.[9] For example, limiting instructions are insufficient to cure prejudice when a defendant is "prejudiced by the admission in evidence against a co-defendant of a statement or confession made by that co-defendant. This prejudice cannot be dispelled by cross-examination if the co-defendant does not take the stand. Limiting instructions to the jury may not in fact erase the prejudice. . . ." *Id.* at 132 (citing Fed. R. Crim. P. 14 Notes of Advisory Committee on 1966 amendments).

More generally, it is simply a fact of human nature that a bell, once rung, cannot be unrung despite even the most careful instructing: "The naïve assumption that prejudicial effects can be overcome by instructions to the jury, . . . , all practicing lawyers know to be unmitigated fiction." *Krulewitch v. United States*, 336 U.S. 440, 453 (1949) (J. Jackson, Concurring) (citations omitted).

---

[9] As discussed above, *Bruton* is directly applicable here and is instructive in highlighting that curative instructions cannot always be relied upon to cure actual prejudice.

Here, Danilovich's confession is too prejudicial because it contains complete confessions that he owned medical clinics and that such clinics were fraudulent. Accordingly, by requesting that the jury not consider the statement against Zemlyansky, the government would essentially be asking the jury to do what Judge Learned Hand called "a mental gymnastic which is beyond, not only their powers, but anybody else's." *Nash v. United States*, 54 F.2d 1006, 1007 (2d Cir. 1932). It is for this reason that the only appropriate remedy in this case is severance.

### CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court sever the trial of Zemlyansky from Danilovich.


Dated: New York, New York
      August 16, 2013


      Respectfully submitted,

      RONALD P. FISCHETTI, ESQ.
      FISCHETTI & MALGIERI LLP
      Attorney for Defendant
      MIKHAIL ZEMLYANSKY
      747 Third Avenue
      20th Floor
      New York, New York 10017
      (212) 593-7100
      (212) 758-2809 fax
      www.fischettilaw.com

ERIC FRANZ, ESQ.
LAW OFFICES OF ERIC FRANZ, P.L.L.C.
Attorneys for Defendant
MIKHAIL ZEMLYANSKY
747 Third Ave.,
20th Floor
New York, New York 10017
(212) 355-2200
(212) 937-2217 fax
www.efranzlaw.com


ANDREW MANCILLA, ESQ.