LAW OFFICE OF
# MARC FERNICH

MARC FERNICH maf@fernichlaw.com
ALSO ADMITTED IN MASSACHUSETTS

810 SEVENTH AVENUE, SUITE 620
NEW YORK, NEW YORK 10019
212-446-2346
FAX: 212-459-2299
www.fernichlaw.com

October 5, 2014

**BY ECF**

Hon. J. Paul Oetken
USDJ-SDNY
Thurgood Marshall U.S. Courthouse
40 Foley Sq.
Courtroom 706
New York, NY 10007

  Re: *U.S. v. Zemlyansky, et al.*, S18 12 CR 171 (JPO) (SDNY)

Dear Judge Oetken:

  I briefly reply to the government's Sept. 20 memorandum opposing Mikhail Zemlyansky's pretrial motions. Long on bombast[1] but short on salient legal analysis, the government's opposition misunderstands both the elements of racketeering conspiracy and the thrust of our evidentiary preclusion argument.

  No one suggests, as the government doggedly insinuates, that 18 U.S.C. § 1962(d) requires proof that Zemlyansky *himself* "committed" or "agreed to commit" *personally* any "predicate offenses." Govt. Mem. 9. What *is* an "ultimate issue"[2] – one the government studiously ignores – is whether Zemlyansky "agreed that at least two predicate acts *would be committed* by *some member of the conspiracy* as part of the conduct of the enterprise." *U.S. v. Mayes*, No. 12-CR-385 (ARR), 2014 WL 25569, at *5 (E.D.N.Y. Jan. 2, 2014) (emphasis supplied); *see, e.g., U.S. v. Basciano*, 599 F.3d 184, 199 (2d Cir. 2010) (§ 1962(d) pattern demands "proof of an agreement" to the commission of "at least two crimes"); *U.S. v. Pizzonia*, 577 F.3d 455, 465 (2d Cir. 2009) (no less than two predicate acts must be "agreed to" for RICO conspiracy); *U.S. v. Persico*, 832 F.2d 705, 713 (2d Cir.

---

[1] *E.g.,* Govt. Mem. 1-2 (Preliminary Statement), 14-15 & n.3, 20.

[2] *Ibid.* 8.

1987) (to convict a defendant of RICO conspiracy, his agreement to the commission of "two or more predicate acts, rather than the acts themselves, [must] be proven").

As noted in our opening memo, *Mayes* is the only case cited by either side to recognize this distinction and appreciate its consequences for estoppel purposes. *See* Def. Mem. 12 n.6. In *Mayes*, an initial jury implicitly found, in acquitting the defendants of conspiring to distribute crack cocaine, that they had not agreed with each other to distribute drugs. That determination, in turn, barred the government from using the crack sales aired in the first trial to prove an essential element of a later RICO conspiracy charge – namely, that the defendants had "entered into an agreement that one of more members of the enterprise would commit two predicate acts" forming a pattern. Def. Mem. 8-10 (quoting 2014 WL 25569, at *6-*7). By parity of reasoning, Zemlyansky's prior health and mail fraud conspiracy acquittals – jury findings that he was not beyond reasonable doubt a party to any agreement to the commission of no-fault insurance fraud – compel the same conclusion here: the government is prohibited from establishing a § 1962(d) pattern by pleading or proving that Zemlyansky agreed to the commission of two or more acts of no-fault fraud. *E.g.,* Def. Mem. 6-8, 11-13; *see also id.* 13-16.

The government attempts to distinguish *Mayes* by insisting that it is impossible to ascertain whether the first jury determined that the no-fault "conspirac[y] did not exist *or* that [Zemlyansky] did not knowingly participate in [it]." Govt. Mem. 7-8, 16-17. This is precisely the sort of hypertechnical approach the Supreme Court shuns in the estoppel context. *E.g.,* Def. Mem. 3 & cases cited. For to show that Zemlyansky agreed *anybody* would commit no-fault fraud, the government must prove *both* propositions – the existence of a no-fault conspiracy *and* Zemlyansky's membership – at least one of which the first jury admittedly rejected. *E.g., U.S. v. Ohayon*, 483 F.3d 1281, 1289 (11th Cir. 2007) (government "estopped from retrying [defendant] for conspiracy because, *regardless of which of two potential issues served as the basis of the jury's verdict*, the government would be required to prove a fact established against it by the acquittals to convict [defendant] of conspiracy") (citing and discussing *U.S. v. Larkin*, 605 F.2d 1360, 1371 (5th Cir. 1979), *modified on other grounds*, 611 F.2d 585 (5th Cir. 1980)) (emphasis supplied). The government brushes this reality aside, failing even to acknowledge – let alone engage – *Ohayon* and *Larkin*.

Unable to distinguish *Mayes* on the merits, the government resorts to understating its burden of proof, claiming it need only show that Zemlyansky "agree[d] to participate in an enterprise *knowing* that some other members of the enterprise would commit [health care] fraud." Govt. Mem. 18, 20 ("*knowing* that his co-conspirators would commit two or more ... predicate acts") (emphasis supplied). In fact, as explained in our opening brief and reiterated here, the government must prove that Zemlyansky *agreed* – not merely *knew* – that a conspirator would commit two related predicate acts that would form a RICO pattern if accomplished. Indeed, the *Mayes* passage quoted immediately after the government's initial knowledge reference expressly so recognizes. *Id.* 18 (government had to prove "unlawful *agreement* that any enterprise member would carry out [drug] sales") (quoting

Hon. J. Paul Oetken
October 5, 2014
Page 3

*Mayes*, 2014 WL 25569, at *6 n.2) (emphasis supplied). More than that, *the government's own indictment* belies its current contention, pointedly asserting that it was "part of the conspiracy that each defendant *agreed* that a conspirator would commit at least two [racketeering] acts" in conducting enterprise affairs. ECF 1057 ¶ 12 (emphasis supplied); *accord* S13 Indictment, ECF 600, ¶ 23 (May 16, 2013) (same); *see generally* Def. Mem. 4-5. And proving Zemlyansky's *agreement* by rehashing the no-fault allegations is exactly what the prior acquittals forbid.

      In sum, the government's estoppel opposition is a strawman built on a fallacious premise: the crude mischaracterization of our argument as a claim that Zemlyansky *himself* must have committed, or agreed to commit *personally*, at least two predicate acts to be guilty of RICO conspiracy. As counsel are acutely aware, the Supreme Court debunked that myth almost 20 years ago. *See Salinas v. U.S.*, 522 U.S. 52 (1997). Accordingly, for the reasons pressed here and in our opening memo, Zemlyansky's preclusion motion should be granted. All other issues are fully joined and we rest on the opening memo, to be amplified orally as necessary.

                                                    Respectfully,

                                                  /s/

                                                Marc Fernich

cc:      All counsel (ECF)