UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                      :
  UNITED STATES OF AMERICA          :
                                      :       12-CR-171-1 (JPO)
              -v-                         :
                                      :       OPINION AND ORDER
  MIKHAIL ZEMLYANSKY,              :
                                      :
                        Defendant.    :
-----------------------------------------------------------X

J. PAUL OETKEN, District Judge:

      On March 19, 2015, following a jury trial, Mikhail Zemlyansky was convicted of participating in a racketeering conspiracy and committing and conspiring to commit securities, mail, and wire fraud. (Dkt. No. 1539.) Zemlyansky moves for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. For the reasons that follow, the motion is denied.

**I.    Background**

     **A.    Indictment and Conviction**

      On January 28, 2014, a grand jury returned a superseding indictment (S18) charging Zemlyansky with six counts. Count One charged Zemlyansky with participating in a racketeering conspiracy involving a criminal enterprise that engaged in securities, wire, and mail fraud relating to a no-fault insurance scheme, investment schemes, money laundering, and illegal gambling. (Dkt. No. 1057.) Counts Two through Six charged Zemlyansky with committing and conspiring to commit mail, wire, and securities fraud arising out of a scheme to defraud investors through a scam investment firm called Lyons Ward and Associates ("Lyons Ward"). The Indictment identified the Lyons Ward investment scheme as a predicate act of securities fraud for the racketeering conspiracy charged in Count One. (Dkt. No. 1057 at 2.)

On January 23, 2015, the Government filed a motion *in limine* seeking to admit evidence that Zemlyansky participated in two additional investment fraud schemes: one involving an LLC called Rockford Funding Group ("Rockford Group"), and one involving a corporation called Baron & Caplan Association ("Baron & Caplan"). The Government argued that Zemlyansky's participation in the two additional schemes provided evidence of the racketeering enterprise and its mail, wire, and securities fraud predicates. (Dkt. No. 1825 ("Gov't Mot.") at 1-2.) The Court granted the Government's motion on February 9, 2015.

Zemlyansky's trial began on February 23, 2015 and concluded on March 19, 2015. At trial, the Government presented evidence that Zemlyansky engaged, *inter alia*, in the Lyons Ward and Rockford Group investment frauds. The Lyons Ward fraud involved cold-calling potential investors to solicit investments in the fraudulent company, which purported to invest in "settlement claim funding." (*Id.* at 8.) Cold-callers promised investors a fixed return rate of up to 18 percent per year. (*Id.*) Rather than investing the money they received, however, Zemlyansky and his co-conspirators worked with money launderers to funnel that money into overseas bank accounts, primarily in Latvia, and then to wire it back to shell companies in New York. (*Id.* at 7-8, 10, 13.) The Government argued that Zemlyansky and his co-conspirators ran the Lyons Ward scheme and recruited a "paper owner" to file Articles of Incorporation with the New York Department of State, open a bank account, and sign a lease for office space. (*Id.* at 8, 10.) Approximately 80 individuals invested a total of nearly $7 million in Lyons Ward between 2007 and 2009. (*Id.* at 8.)

The Rockford Group scheme was similar to the Lyons Ward scheme. (*Id.* at 12.) Like Lyons Ward, the Rockford Group purported to be engaged in settlement funding, but was in fact a sham company. (*Id.* at 12.) At trial, a witness named Igor Katsman testified that he had

laundered more than $1 million for Zemlyansky and his co-conspirator, Michael Danilovich, as part of the Rockford Group scheme. (*Id.* at 13.) Katsman testified that he had laundered $3.5 million in total for both investment schemes. (*Id.*)

The evidence against Zemlyansky also included testimony from William Shternfeld, who solicited victims for the Lyons Ward scheme, and Elaine Morgan, who worked in the building where the Lyons Ward office was located. (*Id.* at 7.) Shternfeld testified that he participated in the Lyons Ward scheme until November 2008 and that a man called "Gino" asked him to solicit investors for the Rockford Group scheme in the spring of 2009. (*Id.* at 10, 12-13.) Morgan testified that she had seen Zemlyansky enter the office building where she worked. (*Id.* at 7.) The Government also introduced evidence from Lyons Ward victims, documents pertaining to Lyons Ward, and an audio recording between a special agent with the Alabama Securities Commission and an individual named "Bob Hamilton." (*Id.*) In the recording, Bob Hamilton told the agent that Lyons Ward was a legitimate investment company. The Government argued at trial that Bob Hamilton was, in fact, Zemlyansky. Three witnesses—Shternfeld, Katsman, and Liya Albanese, an individual who had worked for Zemlyansky—testified that they recognized Bob Hamilton's voice as that of Zemlyansky. (*Id.* at 11 (citing Dkt. Nos. 1585-89 ("Trial Tr.") at 1341-42, 1545-46, 1785-87, 2208-10).)

The jury returned a verdict of guilty on all six counts on March 19, 2015. (Dkt. No. 1539.) On a special verdict form, the jury determined that all of the five predicate acts for Count One—mail fraud, wire fraud, money laundering, securities fraud, and illegal gambling—were proven beyond a reasonable doubt. (*Id.*) The jury also determined that the two sub-predicate acts—health care fraud and investment fraud—were proven beyond a reasonable doubt. (*Id.*)

B.   **EDNY Investigation**

This motion concerns a separate investigation into the Rockford Group scheme in the Eastern District of New York. Prior to 2012, the U.S. Attorney's Office for the Eastern District of New York conducted a joint investigation with other government agencies (the "EDNY Investigation") into the Rockford Group scheme and another investment scheme involving a corporation called Grayson Hewitt. (*Id.* at 14.) The EDNY investigation led to the prosecution of three individuals: Ruslan Rapaport, Peter Liounis, and Genadi Yagodayev.[1]

Rapaport was charged with money laundering and conspiracy to commit wire fraud on April 17, 2012. (*Id.* at 15.) The Complaint alleged that, using the alias "Alex James," Rapaport set up an answering service for the Grayson Hewitt scheme and participated in both the Rockford Group scheme and another fraudulent scheme, a bogus General Motors IPO offering by UBS Bank (the "IPO Scheme"). (*Id.*) Rapaport left the United States on a flight to Russia on January 19, 2012 and has not returned to this country. (*Id.* at 16 n.7.)

Liounis was charged with wire fraud on April 17, 2012. (*Id.* at 14.) The Complaint alleged that Liounis participated in the Grayson Hewitt scheme, the IPO scheme, and the Rockford Group scheme. (*Id.* at 14-15.) It identified Liounis as a cold-caller who attempted to solicit at least one victim in connection with the Rockford Group scheme. (*Id.*) Liounis was arrested on April 18, 2012; he thereafter provided a post-arrest statement. (*Id.* at 16.) On October 24, 2013, the Government moved to dismiss all charges against Liounis related to the Rockford Group and IPO schemes, leaving only the counts related to the Grayson Hewitt

---

[1] A fourth individual, Roman Tsimerman, pleaded guilty to a one-count Information that charged him with money laundering in connection with the Grayson Hewitt scheme. (Dkt. No. 1825 at 14 n.6.) The Complaint against Tsimerman includes allegations that Ruslan Rapaport was involved in both the Grayson Hewitt and the Rockford Group schemes. (*See* Gov't Mot., Ex. 4 at 1.) It alleges that Tsimerman participated in the Grayson Hewitt scheme. (*Id.* at 40-45.)

4

scheme. (*Id.*) After a jury trial from January 27, 2015 to February 5, 2014, Liounis was convicted on all remaining counts. He was sentenced to 292 months' imprisonment on August 22, 2014. (*Id.* at 18-19.)

Yagodayev was charged with wire fraud based on his involvement in the Rockford Group scheme on December 8, 2010. (*Id.* at 19.) The Complaint alleged that he set up an answering service, registered a bogus website, filed Articles of Incorporation, hired an assistant, and rented an office space for the Rockford Group. He was indicted on four counts on May 2, 2014. (*Id.* at 20.) Yagodayev pleaded guilty to one count of conspiracy to commit mail and wire fraud on May 1, 2015. (*Id.*) In his plea allocution, he admitted that he received money to be the paper owner of the Rockford Group. (*Id.*) Yagodayev was sentenced to sixty months' imprisonment and three years of supervised release on December 3, 2015. *United States v. Yagodayev*, No. 14-cr-0258, Dkt. No. 37 (E.D.N.Y. Dec. 3, 2015).

Zemlyansky argues that the Government "knowingly concealed and suppressed that the [EDNY USAO] had conducted its own comprehensive investigation of the Rockford Group." (Dkt. No. 1756 ("Def.'s Mot.") at 2.) He contends that "the EDNY investigation generated in excess of 65,000 pages of discoverable documents underlying the Rockford Group," which the Government had a statutory and constitutional duty to disclose to Zemlyansky before trial. (*Id.*)

## II. Legal Standard

Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, upon a motion by a defendant, a district court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Before ordering a new trial, a district court must find that there is "a real concern that an innocent person may have been convicted." *United States v. Bell*, 584 F.3d 478, 483 (2d Cir. 2009) (quoting *United States v. Sanchez*, 969 F.2d

1409, 1414 (2d Cir. 1992)). To grant a Rule 33 motion, the court must determine that "it would be a manifest injustice to let the guilty verdict stand." *Sanchez*, 969 F.2d at 1414. In light of this standard, "Rule 33 motions are granted 'only in extraordinary circumstances.'" *United States v. Bout*, No. 08–cr–365, 2015 WL 6459177, at *2 (S.D.N.Y. Oct. 26, 2015) (citing *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009)).

The defendant bears the burden of proving that he is entitled to a new trial. *McCourty*, 562 F.3d at 475. Where a Rule 33 motion is filed more than fourteen days after a verdict, the motion must be based on "newly discovered evidence." Fed. R. Crim. P. 33(b). "Relief under Rule 33 based on newly discovered evidence may be granted only upon a showing that: (1) the evidence [was] newly discovered after trial; (2) facts are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence; (3) the evidence is material; (4) the evidence is not merely cumulative or impeaching; and (5) the evidence would likely result in an acquittal." *United States v. Forbes*, 790 F.3d 403, 406-07 (2d Cir. 2015) (citing *United States v. Owen*, 500 F.3d 83, 87 (2d Cir. 2007)) (internal quotation marks omitted) (alterations in original).

In this case, Zemlyansky seeks Rule 33 relief on the ground that the Government violated its obligations under Rule 16 of the Federal Rules of Criminal Procedure. Rule 16 provides that, "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy" any documents, data, or objects in the government's possession, custody, or control that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). "Evidence is material 'if it could be used to counter the government's case or to bolster a defense.'" *United States v. Urena*, 989 F. Supp. 2d 253, 261 (S.D.N.Y. 2013) (citing *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993)).

The defendant bears the burden of making a *prima facie* showing that the evidence in question is material under Rule 16. *Urena*, 989 F. Supp. 2d at 261 (citations omitted). To meet this burden, the defendant "must offer more than the conclusory allegation that the requested evidence is material." *Id.* (citing *United States v. Rigas*, 258 F. Supp. 2d 299, 307 (S.D.N.Y. 2003). Instead, "[t]here must be some indication that the pretrial disclosure of the disputed evidence would . . . [have] enable[d] the defendant significantly to alter the quantum of proof in his favor." *Id.* (citing *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991)). "In assessing the materiality of withheld information, [the court] considers not only the logical relationship between the information and the issues in the case, but also the importance of the information in light of the evidence as a whole." *Stevens*, 985 F.2d at 1180.

Zemlyansky also seeks a new trial on the ground that that the Government violated the Due Process Clause of the Fifth Amendment.[2] The Due Process Clause requires the Government to make a timely disclosure to the defendant of any exculpatory or impeaching evidence in its possession that is material. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment . . . ."); *see also Strickler v. Greene*, 527 U.S. 263, 282-83 (1999) ("[T]he duty to disclose [*Brady*] evidence is applicable even though there has been no request by the accused, and that the duty encompasses impeachment evidence as well as exculpatory evidence.") (internal citations omitted).

---

[2] For *Brady* purposes, the Due Process Clauses of the Fifth and Fourteenth Amendments are congruent. *See United States v. Agurs*, 427 U.S. 97, 108 (1976) ("We are dealing with the defendant's right to a fair trial mandated by the Due Process Clause of the Fifth Amendment to the Constitution. Our construction of that Clause will apply equally to the comparable Clause in the Fourteenth Amendment applicable to trials in state courts."); *see also U.S. v. Meregildo*, 920 F. Supp. 2d 434, 438 (S.D.N.Y. 2013) ("The Due Process Clause of the Fifth Amendment requires the Government to disclose favorable material-evidence to a criminal defendant.").

Materiality is different in the context of a *Brady* motion, which concerns the constitutional right to due process, than it is under Rule 16, which governs discovery in criminal cases. *See Maniktala*, 934 F.2d at 28 (2d. Cir. 1991) (citing *United States v. Starusko*, 729 F.2d 256, 262 (3d Cir. 1984) ("Unlike Rule 16 . . . *Brady* is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation and is not violated unless the government's nondisclosure infringes upon a defendant's right to a fair trial.") (internal quotation marks omitted)); *United States v. Chalmers*, 410 F. Supp. 2d 278, 289 (S.D.N.Y. 2006) (Chin, J.) ("[T]he 'material to the defense' category [of documents subject to Rule 16] is arguably a broader scope of documents than exculpatory materials required by *Brady* . . . ."). For the purpose of a *Brady* motion, evidence is material only "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Strickler*, 527 U.S. at 280 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

The reasonable probability standard "does not require demonstration by a preponderance [of the evidence] that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). Instead, a court considering a *Brady* motion asks whether, in the absence of the suppressed evidence, the accused "received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* The *Brady* inquiry thus concerns the legitimacy of a trial outcome rather than the likelihood that the defendant would have "received a different verdict with the evidence" in question. *Id.*

In assessing whether alleged *Brady* evidence is material, the court analyzes the potential impact of the suppressed evidence "collectively, not item-by-item." *Kyles*, 514 U.S. at 436. "A new trial is generally not required when the testimony of [a] witness is corroborated by other testimony," *United States v. Payne*, 63 F.3d 1200, 1210 (2d Cir. 1995) (citation and internal

8

quotation marks omitted), or "where the undisclosed evidence merely furnishes an additional basis on which to challenge a witness whose credibility has already been shown to be questionable," *United States v. Persico*, 645 F.3d 85, 111 (2d Cir. 2011). In addition, there is no due process violation where a defendant "knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." *Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001) (citation omitted).

### III. Discussion

#### A. Alleged Rule 16 Violation

Zemlyansky seeks Rule 33 relief on the ground that the Government violated Rule 16. He contends that, had the Government disclosed the EDNY Investigation materials, his trial counsel could have highlighted the paucity of documentary proof against him and contrasted the law enforcement techniques used to convict him with those used to support prosecutions in the Eastern District.[3] (Dkt. No. 1756 ("Def.'s Mot.") at 5, 27.)

The Government argues that it complied with its Rule 16 obligations and that, even if it did not, failure to disclose the EDNY Investigation materials does not warrant a new trial under Rule 33. (Gov't Mot. at 41, 46.) In support of this argument, the Government notes that most of the evidence in question relates to the Grayson Hewitt fraud, which was not at issue in Zemlyansky's trial, rather than to the Rockford Group scheme. (*Id.* at 30.) The Government also asserts that it disclosed some of the materials in question prior to trial, and, notwithstanding any failure to disclose, that Zemlyansky could have made the same arguments at trial that he now makes about the dearth of documentary evidence connecting him to the investment frauds. (*Id.*

---

[3] In addition to filing briefs through his counsel, Zemlyansky mailed a letter concerning his motion for a new trial directly to the Court. (*See* Dkt. No. 1861.) The Court has reviewed the letter and has considered the arguments presented therein.

at 37.) Finally, the Government argues that the distinction between law enforcement techniques across jurisdictions is immaterial as a matter of law and irrelevant in light of this Court's jury instructions. (*Id.* at 40 (citing Trial Tr. at 2874) ("While you are to carefully consider the evidence adduced by the government, you are not to speculate as to why they used the techniques they did or why they did not use other techniques. The government is not on trial. Law enforcement techniques are not your concern.").)

The Court need not determine whether the EDNY Investigation evidence was material under Rule 16, because even if it was, the failure to disclose this evidence does not justify Rule 33 relief in this case. A new trial is warranted upon the discovery of new evidence only when, in addition to being material, the evidence is "not merely cumulative or impeaching" and "would likely result in an acquittal." *Forbes*, 790 F.3d at 406-07; *see Owen*, 500 F.3d at 88 (reviewing decisions from the Third, Fifth, Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits). Here, the EDNY Investigation materials are largely cumulative of evidence presented by the Government to support its assertion that the Rockford Group scheme was fraudulent. The evidence at issue includes telephone recordings between unidentified cold-callers and Rockford Group victims; letters to victims; bank account records showing that victims' money was transferred overseas; answering service records; and evidence that the Rockford Group scheme had a "paper owner." All of this information mirrors the evidence presented at Zemlyansky's trial.

The EDNY Investigation materials also include evidence showing (1) that other individuals participated in the Rockford Group scheme and (2) that another scheme, Grayson Hewitt, began after the Rockford Group fraud. This evidence is consistent with the Government's presentation of its case. At trial, the Government argued that Zemlyansky participated in the Lyons Ward and Rockford Group schemes before turning from those

10

investment frauds to healthcare fraud and other unlawful conduct. The Government also argued that Zemlyansky worked with "numerous other criminals" on the investment schemes, and that he took pains to conceal his involvement in Lyons Ward and Rockford Group. (Gov't Mot. at 34, 35 (citing Trial Tr. at 2661, 2644-45).) The EDNY Investigation materials do not undermine these assertions—perhaps at all, and certainly not enough to warrant a new trial under the standard for Rule 33 relief. *Forbes*, 790 F.3d at 406-07.

In his reply to the Government's brief, Zemlyansky focuses in particular on a law enforcement report and notes on Peter Liounis' post-arrest statement. (Dkt. No. 1843 ("Def.'s Reply") at 5-6.) According to that report, Liounis described "Alex"—an individual the Government alleges is Ruslan Rapaport—as "the main guy" in the Grayson Hewitt, Rockford Group, and IPO schemes. (Gov't Mot., Ex. 11 at 1.) Liounis also stated that Alex was one of a group of "possibly Jewish-Russian[ ]" individuals who were "running all the 'deals.'" (*Id.*) Zemlyansky argues that disclosure of this report and the notes on which it is based would have enabled him to argue that he played no role in the Lyons Ward scheme. (Def.'s Reply at 5-6.)

Having reviewed the report and notes, and both parties' submissions, the Court concludes that, even if this evidence were subject to disclosure under Rule 16, the fact that it was not disclosed does not justify a new trial.[4] To warrant a new trial, Liounis' post-arrest statement about the Rockford Group scheme would have to undermine the jury's verdict as to the Lyons Ward scheme enough to raise "a real concern that an innocent person may have been convicted." *Bell*, 584 F.3d at 483. The evidence showing Zemlyansky's participation in Lyons Ward included testimony from two co-conspirators, an eyewitness identification, and a voice

---

[4] Given this holding with respect to the standard for relief under Rule 33, the Court need not decide whether the report and notes are exempt from disclosure pursuant to Federal Rule of Criminal Procedure 16(a)(2).

11

recording, which three witnesses—including one was not a co-conspirator, and who had worked closely with Zemlyansky for more than a year—identified as Zemlyansky. In light of this evidence, and the other evidence presented at trial, Zemlyansky has not made the requisite showing that the failure to disclose the post-arrest statement warrants Rule 33 relief.

Zemlyansky's arguments as to investigative techniques and the dearth of documentary proof fail for largely the same reasons. Zemlyansky was convicted of committing and conspiring to commit the Lyons Ward securities fraud and participating in a racketeering conspiracy based, among other acts, on a securities fraud predicate. (Dkt. No. 1539.) He seeks a new trial on the ground that an investigation into different, later frauds so infects the Lyons Ward evidence that it would be a "manifest injustice" to let his guilty verdict stand. *Sanchez*, 969 F.2d at 1414. Given the totality of the evidence presented at trial and the standard for Rule 33 relief, which reflects deference to the jury's role as fact-finder, the Court denies the motion for a new trial on this ground.

### B. Alleged *Brady* Violation

Zemlyansky also argues that the Government's failure to disclose the EDNY Investigation materials deprived him of due process. (Def.'s Mot. at 25.) To determine whether a *Brady* violation occurred, the Court considers whether the evidence is "material" under the reasonable probability standard. *See Youngblood v. West Virginia*, 547 U.S. 867, 870 (2006) (stating the standard for materiality in *Brady* cases); *United States v. Coppa*, 267 F.3d 132, 141 (2d Cir. 2001) (discussing the scope of the term "'material' in the *Brady* context"). Reversal of a conviction is required where the suppressed evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *United States v. Mahaffy*, 693 F.3d 113, 127 (2d Cir. 2012) (quoting *Youngblood*, 547 U.S. at 870).

The Court concludes that the EDNY Investigation evidence is not material under *Brady* and its progeny. In assessing the *Brady* portion of Zemlyansky's motion, the Court does not ask whether Zemlyansky has shown that he would have been acquitted if the EDNY Investigation materials had been disclosed. Instead, the question is whether, without those materials, Zemlyansky received a fair trial. *Kyles*, 514 U.S. at 434.

Viewing the evidence in question collectively, the Court concludes that he did receive a fair trial. *Id.* at 436. The majority of the EDNY Investigation evidence relates to a different scheme—Grayson Hewitt—and the evidence related to Rockford Group is overwhelmingly consistent with the Government's case in Zemlyansky's trial. The undisclosed evidence shows that the Rockford Group had cold-callers and a paper owner, and that a Rockford Group cold-caller identified "Alex," rather than Zemlyansky, as the "main guy" in a group of "possibly Jewish-Russian[ ]" individuals who were "running all the 'deals.'"[5] (Gov't Mot., Ex. 11 at 1.) This evidence does not "put the whole case" that Zemlyansky participated in Lyons Ward "in such a different light as to undermine confidence in the verdict." *Youngblood*, 547 U.S. at 870; *see also Coppa*, 267 F.3d at 140 (collecting cases on "what it means for the Government to 'suppress' evidence"). This evidence does not undermine the strength of any of the evidence showing that Zemlyansky was personally involved in the Lyons Ward scheme (regardless of

---

[5] Even if it had been disclosed, Liounis' post-arrest statement is unlikely to have been evidence at Zemlyansky's trial. The report and notes on Liounis' statement would be inadmissible hearsay if elicited through a law enforcement agent, and if subpoenaed by the defense to testify to the statement directly, Liounis could have invoked his Fifth Amendment right not to give incriminating testimony against himself. *See United States v. Gil*, 297 F.3d 93, 104 (2d Cir. 2002) (stating circumstances under which inadmissible evidence can be *Brady* material). The fact that this evidence is unlikely to have been introduced at trial does not, by itself, bar a determination that the evidence constitutes *Brady* material. *See id.* Here, however, the Court concludes that, even if the evidence could have been elicited, its suppression did not deprive Zemlyansky of due process.

whether he was known by others to be the "main guy" of the subsequent Rockford Group scheme): the Bob Hamilton call; the three voice-identifications; the testimony of Katsman, Morgan, and Shternfeld. Moreover, this new evidence is entirely consistent with the Government's evidence at trial that Zemlyansky carefully concealed his role in these schemes. Zemlyansky, in other words, was not prejudiced by the nondisclosure. *United States v. Gil*, 297 F.3d 93, 101 (2d Cir. 2002) (citing *Strickler*, 527 U.S. at 281-82) ("To establish a *Brady* violation . . . prejudice must have ensued.").

## IV. Conclusion

For the foregoing reasons, Zemlyansky's motion for a new trial is DENIED. The Clerk of Court is directed to close the motion at docket number 1755.

SO ORDERED.

Dated: January 11, 2016
New York, New York

_____
J. PAUL OETKEN
United States District Judge